[844 NE2d 1126, 811 NYS2d 604]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES JACOBS, Appellant.

Argued November 16, 2005; decided December 15, 2005

**POINTS OF COUNSEL**

*Legal Aid Society,* New York City (*Karen G. Leslie* and *Laura R. Johnson* of counsel), for appellant. Appellant was deprived of

his right to counsel under the United States and New York constitutions when he was unknowingly represented at trial by an imposter as well as an admitted attorney. (*People v Felder*, 47 NY2d 287; *Perry v Leeke*, 488 US 272; *Holloway v Arkansas*, 435 US 475; *Chapman v California*, 386 US 18; *Johnson v Zerbst*, 304 US 458; *Solina v United States*, 709 F2d 160; *People v Kieser*, 79 NY2d 936; *United States v Novak*, 903 F2d 883; *Geders v United States*, 425 US 80; *People v Jacobs*, 13 AD3d 98.)

*Robert T. Johnson, District Attorney*, Bronx (*Peter D. Coddington* of counsel), for respondent. Although appellant was represented in part by a nonlawyer, the order affirming this judgment should be affirmed because he was actively represented throughout the trial by an admitted attorney. (*People v Felder*, 47 NY2d 287; *People v Kieser*, 172 AD2d 626, 79 NY2d 936, 56 F3d 16; *People v Carter*, 77 NY2d 95; *Solina v United States*, 709 F2d 160; *People v Leslie*, 154 Misc 2d 325, 232 AD2d 94, 91 NY2d 875, *dismissal of habeas affd sub nom. Leslie v Artuz*, 230 F3d 25, 531 US 1199; *Strickland v Washington*, 466 US 668; *People v Caban*, 5 NY3d 143; *People v Duncan*, 46 NY2d 74; *United States v Novak*, 903 F2d 883; *United States v Merritt*, 528 F2d 650.)

### OPINION OF THE COURT

Chief Judge KAYE.

In *People v Felder* (47 NY2d 287, 291 [1979]), this Court held that when "a defendant in a criminal proceeding has unwittingly been represented by a layman masquerading as an attorney but in fact not licensed to practice law, his conviction must be set aside without regard to whether he was individually prejudiced by such representation." We decline to extend this rule of per se reversal to every situation, such as that before us, in which a nonlawyer participates in a trial as cocounsel with an admitted attorney.

Defendant was charged in a 10-count indictment with robbery, assault and related crimes. At his bench trial, he was represented by two persons employed by the Bronx Defenders, Lisa Cartier-Giroux and Diane Shamis. Defendant was ultimately acquitted of nine of the charges against him, and convicted of the single count of grand larceny in the fourth degree.

After defendant's conviction, it was discovered that Shamis, unbeknownst to her employer and despite having held herself

out for six years as an admitted attorney, had never been licensed to practice law. Although Shamis had graduated from an accredited law school and passed both the bar examination and the multistate professional responsibility examination, she never appeared before the Committee on Character and Fitness as required for her ultimate admission to the New York bar (*see* Judiciary Law §§ 460, 478; 22 NYCRR 520.12).[1]

A defendant is entitled to the effective assistance of counsel (*see* US Const Amend VI; NY Const, art I, § 6). And because counsel "can mean nothing less than a licensed attorney at law" (*Felder*, 47 NY2d at 293), a defendant who is represented only by a layperson has been completely deprived of counsel and is entitled to per se reversal of a resulting conviction.[2] But when, as here, a defendant has been at all times represented by an admitted attorney, mere participation of a nonlawyer in the defense does not, without more, mandate reversal.

Rather, because the active participation of a licensed attorney throughout a defendant's trial should generally suffice to ensure that the defendant's rights are protected, a conviction should not be reversed in the absence of a showing of prejudice. Indeed, every jurisdiction to have addressed the issue before us has reached a similar conclusion (*see e.g. United States v Novak*, 903 F2d 883, 890-891 [2d Cir 1990]; *Commonwealth v Sellon*, 380 Mass 220, 227-228, 402 NE2d 1329, 1336 [1980]; *People v Cox*, 12 Ill 2d 265, 273-274, 146 NE2d 19, 24 [1957]; *Riggs v State*, 235 Ind 499, 504, 135 NE2d 247, 250 [1956]; *Higgins v Parker*, 354 Mo 888, 191 SW2d 668 [1945]).

In this case, the Appellate Division's findings that Cartier-Giroux acted as lead counsel throughout defendant's trial and that Shamis's trial participation was minimal have support in the record. As the dissent points out, Cartier-Giroux filed and subscribed all pretrial defense motions and discovery demands; argued against the People's applications made pursuant to

---

**1.** Shamis later pleaded guilty to the crime of practicing or appearing as an attorney-at-law without being admitted and registered (*see* Judiciary Law §§ 478, 485).

**2.** Nevertheless, in *People v Kieser* (79 NY2d 936, 937 [1992]), we explained that "not every defect in an individual's ability to practice law renders his representation a deprivation of th[e] right [to counsel]. Thus, courts have distinguished between those defects that are 'technical' . . . and those that are 'serious and substantive' " (citations omitted). We therefore held that the defendant was not deprived of his right to counsel by the failure of his attorney, who was licensed to practice law in New Jersey, to secure admission pro hac vice to practice in New York.

*People v Molineux* (168 NY 264 [1901]), *People v Ventimiglia* (52 NY2d 350 [1981]) and *People v Sandoval* (34 NY2d 371 [1974]), and in support of defendant's application under *People v Betts* (70 NY2d 289 [1987]); argued against recusal of the Justice originally assigned to preside over the trial; signed the waiver of defendant's right to a jury trial; cross-examined the prosecution's witness; negotiated the stipulation by which all defense exhibits were introduced into evidence; argued in support of defendant's request for an adverse inference; made most of the objections and legal arguments at trial; delivered defendant's closing argument; made a bail application on defendant's behalf after the guilty verdict; moved to set aside the verdict; and represented defendant at sentencing.

Shamis, by contrast, delivered the opening statement in this nonjury trial and conducted a brief direct examination of the sole defense witness,[3] whose only purpose was to introduce an alleged prior inconsistent statement of the People's witness. In addition, Shamis made a few objections and moved to dismiss the People's case.[4] At each of these stages, Cartier-Giroux was present and available to ensure that defendant received the effective assistance of counsel. Moreover, defendant fails to point to a single error arguably committed by Shamis in the course of her minimal participation in the trial.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). If a defendant in a criminal proceeding is unwittingly represented at a bench trial by a law school graduate who has passed the bar but is masquerading as a duly licensed attorney, as well as duly licensed counsel, has he or she been deprived of the constitutional right to counsel? The answer to that question arguably depends in part on the level of participation of the nonlawyer. Where, as here, the person posing as an attorney and the licensed counsel were cocounsel who divided up various duties pertaining to the defendant's defense, and two of the nonlawyer's duties were to make the opening statement and present the defendant's case to the factfinder,

---

3. This examination—including objections made by the People and ruled on by the court—spans less than four transcript pages. The redirect examination, with objections and rulings, spans an additional two pages.

4. Further, when Cartier-Giroux argued in opposition to the People's motion to recuse the original trial judge, Shamis stated that her recollection matched Cartier-Giroux's (and the Judge's) as to what the Judge had said on a prior occasion.

and the licensed attorney was not the nonlawyer's supervisor, the nonlawyer's participation in the defendant's defense is significant. In light of the significant role played by the nonlawyer and given the fundamental principle that the right to counsel means the right of a defendant to be represented by an admitted attorney during *all* phases of the criminal proceeding, defendant has been deprived of the right to counsel under the Federal and New York constitutions. Accordingly, I dissent and would vote to reverse defendant's conviction and remand for a new trial.[1]

Facts and Procedural History

On November 13, 2001, defendant was indicted, in Bronx County, for the following 10 crimes: (1) robbery in the first, second and third degrees; (2) grand larceny in the fourth degree; (3) assault in the second and third degrees; (4) criminal possession of stolen property in the fifth degree; (5) criminal possession of a weapon in the fourth degree; (6) criminal mischief in the fourth degree; and (7) tampering with a witness in the fourth degree. In September 2002, defendant was convicted, after a bench trial, of grand larceny in the fourth degree. Defendant was sentenced to an indeterminate prison term of 2 to 4 years and a final order of protection was issued.

At his bench trial, defendant was represented by Lisa Cartier-Giroux and Diane Shamis of the Bronx Defenders. It was not uncommon for the Bronx Defenders office to try cases with two lawyers who would divide the trial duties. Cartier-Giroux: (1) signed and filed the sole pretrial motion; (2) argued the defense position on the pretrial *Ventimiglia*,[2] *Sandoval*,[3] *Betts*,[4] and discovery applications; (3) argued against recusal of the Justice originally presiding over the matter (defendant was eventually tried by another Justice); (4) signed documents effectuating defendant's waiver of his right to a jury trial; (5) cross-examined the sole witness for the prosecution; (6) introduced or engineered the stipulation by which all defense exhibits were introduced into evidence; (7) made the application for an adverse inference charge for the nonproduction of 911 tapes related to one of the crimes charged; (8) made a number of the objections and argu-

---

1. Assuming, as we have been informed, that the imposter represented other clients in other cases, the role of this Court must be to eradicate any hint that the right to counsel can be diluted.
2. 52 NY2d 350 (1981).
3. 34 NY2d 371 (1974).
4. 70 NY2d 289 (1987).

ments at trial; (9) made the closing argument for the defense; (10) made a bail application on defendant's behalf after the guilty verdict; (11) moved to set aside the verdict; and (12) represented defendant at sentencing. Shamis: (1) participated in opposing the above-mentioned motion for recusal; (2) made the opening statement for the defense; (3) put on the case for the defense; (4) made a motion to dismiss at the end of the People's case; and (5) made various objections and arguments at trial.

A fair reading of the record makes clear that while Cartier-Giroux undertook a major share of the duties in defendant's representation, Shamis was trial cocounsel of record; Cartier-Giroux did not consider Shamis to be an underling in need of supervision (the only reference to a supervising attorney was made by Cartier-Giroux when she asked the court, directly before responding to the People's application seeking recusal of the original presiding Justice, whether she could confer with her supervisor); and Cartier-Giroux and Shamis, consistent with the practices of their office, divided up the duties pertaining to defendant's defense. This division of responsibility was plainly evident when Cartier-Giroux, prior to the People's opening statement and while waiting for Shamis to arrive in the courtroom, noted that the case was being tried by two lawyers, that the duties had been divided and that Shamis would be the one responsible for the opening statement. Cartier-Giroux' statements, which seemed to express concern that Shamis was not present for the People's opening, prompted the court to say, "Counsel, if you wish to have another attorney sit in, that is alright with me."

Subsequent to the verdict, it came to light that only Cartier-Giroux was an attorney admitted to practice law in New York. While Shamis graduated from an approved law school and passed the July 1996 bar examination and the August 1996 multistate professional responsibility examination, unbeknownst to defendant, her cocounsel for the instant matter (Cartier-Giroux), the People and the Supreme Court Justice who heard and decided the case, Shamis, who for years had held herself out to be a licensed attorney, had never been admitted to practice law in New York or any other state.[5]

---

5. Shamis spent four years trying juvenile cases for the Legal Aid Society and two years with the Bronx Defenders. During this time, she "represented"

By decision and order entered December 7, 2004, the Appellate Division affirmed the judgment of conviction, concluding that: "Under the circumstances of this case, where the duly licensed attorney clearly acted as lead counsel, was present throughout the proceedings and conducted most of the trial, defendant received effective assistance of counsel." (13 AD3d 98, 99 [2004].) On March 14, 2005, a Judge of this Court granted defendant leave to appeal. On July 6, 2005, this Court granted the People's motion to enlarge the record on appeal to include a practice order issued by the Appellate Division, First Department on October 19, 2000 and signed by Justice Richard T. Andrias.[6] Now, this Court inappropriately affirms the Appellate Division order.

The Federal and State Right to Counsel

Under the Sixth Amendment to the Federal Constitution, a criminal defendant has the right "to have the Assistance of Counsel for his defence." "This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty" (*Johnson v Zerbst*, 304 US 458, 462 [1938]).

> "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution" (*id*. at 465).

The Sixth Amendment right to assistance of counsel is made obligatory on the states by the Fourteenth Amendment to the

---

hundreds of defendants/clients. In August 2004, Shamis pleaded guilty to practicing law without being admitted and registered, a violation of the Judiciary Law. Under the terms of her plea, she was given a conditional discharge and fined $500.

**6.** The People discovered that Bronx Defenders, Shamis' employer, had obtained a practice order pursuant to the Judiciary Law. The practice order permitted persons who had passed the bar exam, but had not been admitted to the bar, to represent clients in Bronx Supreme Court (Criminal Term), under the supervision of an admitted attorney. The practice order required the "prior approval, upon ex parte application, of the judge presiding over the action or proceeding" and written consent by the client to representation by such persons. The "FURTHER ORDERED" paragraph of the practice order provided that the program covered under the order was granted for a period of three years. According to the People, defendant's trial was covered under the practice order.

Federal Constitution (*see Gideon v Wainwright*, 372 US 335 [1963]).

Article I, § 6 of the Constitution of New York State provides in pertinent part, "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel." New York's right to counsel applies to every critical stage of the criminal proceeding (*see People v Chapman*, 69 NY2d 497 [1987]) and is so fundamental a legal principle that this Court has consistently exercised the highest degree of vigilance in safeguarding and defending it (*see People v Cunningham*, 49 NY2d 203, 207 [1980]). Regarding New York's right to counsel, this Court stated:

> "In New York, the right to counsel is grounded on this State's constitutional and statutory guarantees of the privilege against self-incrimination, the right to the assistance of counsel and due process of law. It extends well beyond the right to counsel afforded by the Sixth Amendment of the United States Constitution and other State Constitutions" (*People v Davis*, 75 NY2d 517, 521 [1990] [citations omitted]; *see also People v Bing*, 76 NY2d 331, 338-339 [1990] [the protection provided under New York's right to counsel is far more expansive than the right to counsel embodied in the Sixth Amendment of the Federal Constitution]).

With respect to both the federal and state right to counsel, the term "counsel" is synonymous with "licensed attorney-at-law." Regarding the term "counsel," this Court stated: "Counsel, as the word is used in the Sixth Amendment can mean nothing less than a licensed attorney at law. A lay person, regardless of his educational qualifications or experience, is not a constitutionally acceptable substitute for a member of the Bar" (*People v Felder*, 47 NY2d 287, 293 [1979]). In support of this statement, the Court noted:

> "For centuries prior to the enactment of the Sixth Amendment, the English forerunner of the American lawyer was called or invited to practice for a Court only after the Court had satisfied itself that a person was fit to practice by virtue of his character and/or training. On the American side of the ocean, this practice continued throughout the colonial, revolutionary and post-revolutionary era of our his-

tory. Although standards for admission were not all uniform and were not always very stringent, the tradition of admission upon qualification continued to exist from even the earliest times of the American legal experience. . . ." (*Felder*, 47 NY2d at 294, quoting *Turner v American Bar Assn.*, 407 F Supp 451, 474 [Dist Ct Ala 1975].)

Thus, at a bare minimum, the right to counsel means the right of a defendant to be represented by a licensed attorney-at-law during *all* phases of the criminal proceeding. Here, defendant was not afforded such protection during his opening statement and the presentation of his case.

Representation by a Nonlawyer

Relying on *People v Leslie* (154 Misc 2d 325 [Sup Ct 1992], *affd* 232 AD2d 94 [1st Dept 1997], *lv denied* 91 NY2d 875 [1997], *petition for writ of habeas corpus dismissed sub nom. Leslie v Artuz*, 72 F Supp 2d 267 [SD NY 1999], *affd* 230 F3d 25 [2d Cir 2000], *cert denied* 531 US 1199 [2001]), the Appellate Division and the People argue that: (1) Shamis' mere presence did not require that defendant's conviction be reversed; (2) defendant was required to demonstrate that Shamis' imposture denied him effective assistance of counsel under the prejudice standard set forth in *Strickland v Washington* (466 US 668 [1984]); and (3) no violation of the right to counsel occurs if a licensed attorney-at-law provides effective assistance at all critical stages of the proceedings. In response to these arguments, if Shamis was merely present and did not actively participate in the instant criminal proceeding, I would agree with the majority. However, as indicated above, Shamis represented defendant at various portions of the trial without the assistance of her cocounsel. It was Shamis who gave the defendant's opening statement which told the court what the defense would be. And it was Shamis who put on the entire defense case consisting of one witness. Thus, Shamis' role at the trial cannot be considered minor.

Further, requiring that defendant demonstrate that he was denied effective assistance of counsel when he was deprived of counsel outright during certain stages of the trial applies the incorrect legal standard. First, when considering whether a defendant was denied effective assistance of counsel, the term "counsel" must be considered. As noted above, counsel, for federal and New York right to counsel purposes, means a licensed attorney-at-law. Where, as here, a nonlawyer acts dur-

ing important stages of the trial, these actions amount to an absolute deprivation of counsel because the nonlawyer is not "counsel" in the constitutional sense. Accordingly, the *Strickland* standard and the *Baldi* standard (*People v Baldi*, 54 NY2d 137 [1981] [both pertaining to effective assistance of duly licensed counsel]) are inapplicable here. Applying the standard of a lawyer's error and prejudice (*Strickland*) or meaningful representation (*Baldi*) is problematic because it necessarily calls for an evaluation of the quality of representation of defendant by Shamis.[7] Moreover, Shamis' cocounsel, because she was unaware of Shamis' imposture, was not alerted to the necessity of providing legal assistance at *all* critical stages of the proceedings. The cases and arguments presented by the People, the Appellate Division and the majority do not adequately address the issues before this Court. To the contrary, this Court need look no further than *People v Felder* (47 NY2d 287 [1979]) and *People v Kieser* (79 NY2d 936 [1992]) for guidance in resolving this matter.

In *Felder*, this Court held that where the defendant in a criminal proceeding is unwittingly represented by a nonlawyer who holds himself out to be a licensed attorney-at-law, the defendant's right to counsel, as guaranteed by the Federal and New York State constitutions, is violated, and his conviction must be set aside regardless of whether defendant was prejudiced by the representation.[8] Consistent with its holding that prejudice is irrelevant in a case involving representation by one not licensed to practice law and given the fundamental nature of the right to counsel, this Court concluded that the harmless error standard has no application to a case involving the right to counsel. This Court stated:

> " 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice

---

**7.** The People and the majority cite cases from other jurisdictions for the proposition that, in a case like this one, the defendant must demonstrate a denial of the effective assistance of counsel (i.e., prejudice). These cases are not persuasive. First, they are largely distinguishable from the instant matter. Second, as previously mentioned, New York State provides greater protection to the right to counsel than required by the Federal Constitution and constitutions of other states.

**8.** *Felder* involved four criminal cases in which each of the defendants was represented by one who was not and had never been admitted to practice law in New York or any other jurisdiction. Nor did this imposter ever satisfy the prerequisites for the practice of law (e.g., he never completed law school).

arising from its denial.' Notions of prejudicial impact, overwhelming evidence of guilt and the like, which are the underpinnings of the constitutional harmless error doctrine, are significant in the context of trial errors, e.g., the admission of improperly seized evidence or the improper admission of the confession of a codefendant who did not take the stand. A denial of the right to assistance of counsel, however, not unlike prosecutorial misconduct, misconduct on the part of the Trial Judge or denial of a public trial, invalidates the trial. As the Supreme Court has recently said, 'this Court has concluded that the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." ' " (*Felder*, 47 NY2d at 296 [citations omitted].)

As noted above, *Felder* involves defendants who were represented at trial by an imposter. This case, similarly, involves a defendant who was represented by an imposter. However, unlike *Felder*, defendant here was also represented by a licensed attorney-at-law. While this arguably makes *Felder* distinguishable from the case presently before the court, the distinction drawn is of little legal significance. The fact of the matter is that defendant was without counsel during the portions of the bench trial conducted by Shamis.

*Kieser* addressed a question left open by *Felder*: whether a defendant's representation by a lawyer who was temporarily not entitled to practice law may violate a defendant's constitutional right to counsel. In *Kieser*, this Court held that:

"under the circumstances of this case, the failure of defendant's counsel, who at the time of defendant's trial was an attorney in good standing and duly licensed to practice law in New Jersey, to secure admission pro hac vice to practice in New York, did not affect his professional qualifications or competence such as to deprive defendant of his right to counsel under the Federal and New York State Constitutions. Nor did counsel's temporary suspension to practice law in New Jersey for nonpayment of Bar dues at the time he represented defendant deprive defendant of his right to counsel" (*Kieser*, 79 NY2d at 937).

In support of its holding, this Court found that the attorney's deficiencies were "technical" defects (defects that do not rise to the level of a violation of a defendant's right to counsel) (*id.*). Prior to making this finding, the *Kieser* court distinguished "technical" defects from "serious and substantive" defects (those defects that rise to the level of a violation of a defendant's right to counsel) (*id.*). The Court stated that:

> "Although the defendant's right to counsel is guaranteed by the Sixth Amendment of the Federal Constitution and article I, § 6 of the New York Constitution (US Const 6th, 14th Amends; NY Const, art I, § 6), not every defect in an individual's ability to practice law renders his representation a deprivation of that right. Thus, courts have distinguished between those defects that are 'technical', i.e., those resulting from administrative suspension or censure for failure to comply with State Bar rules which have no bearing on the 'qualification, competence or moral character of the defendant's representative' and those that are 'serious and substantive' such as a representative's inability to practice law in any State because of a failure to seek admission or where admission to practice has been denied ' "for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character" ' " (*Kieser*, 79 NY2d at 937-938 [citations omitted]).

Here, the People argue that the defects in Shamis' ability to practice law are "technical" in nature and did not render her representation a deprivation of defendant's right to counsel. The People further argue that because the October 2000 practice order was so broad, Shamis' noncompliance (she did not get the required approvals and had no supervising attorney) can only be considered a technical defect under *Kieser*. Each of these arguments, however, lacks merit. First, Shamis' "defect," the inability to practice law because of her failure to seek admission, falls squarely under the "serious and substantive" category discussed above.[9] Second, given the importance of the right to counsel, there must be strict adherence to all the provisions

---

**9.** The People contend that the "serious and substantive" language in *Kieser* is dicta and that this Court is not bound by it. While arguably true, this language is dicta that supports defendant's position and hurts the People's position.

in a practice order.[10] Under practice orders, law students and law school graduates can gain invaluable experience regarding criminal matters. However, the experience received by a law school student or graduate cannot be weighed against or override the rights of the defendant, the person whose liberty is at risk in a criminal proceeding.[11] Finally, I cannot agree with the Appellate Division's statement that the role of Shamis was "minor" (13 AD3d at 99) nor with the majority's assessment of no prejudice, particularly when neither this Court nor any court is privy to the determinations of strategy which a defense counsel makes.

Conclusion

Because defendant, due to Shamis' imposture, was deprived of his right to counsel at key stages of the trial, the Appellate Division's order should be reversed and the matter remanded to Supreme Court for a new trial. There are two types of right to counsel deprivation: (1) where a defendant is being represented by counsel, but the representation is ineffective; and (2) where defendant is represented by someone who is not "counsel." In this case, despite competent representation by Shamis' cocounsel during parts of the trial, the latter type of deprivation still occurred because defendant was not represented by counsel during the opening statement, the presentation of defendant's case, and when the motion for a trial order of dismissal was made—all significant portions of any trial. As previously stated, the right to counsel guaranteed by the Federal and New York State constitutions requires nothing less than a licensed attorney-at-law at all critical stages of the criminal proceeding. This necessarily means that the licensed attorney-at-law must be an active participant during the critical stages of the criminal proceeding. Here, the licensed attorney-at-law was merely present for the portions of the trial conducted by Shamis. As far as the licensed attorney was concerned, Shamis was also a

---

**10.** As previously noted, the right to counsel ensures fairness of the adversarial criminal process, contemplates representation only by licensed attorneys-at-law and is vigorously guarded by New York courts.

**11.** In further support of the argument that Ms. Shamis' defects were technical, the People contend that there is nothing in the record that would have allowed the Committee on Character and Fitness to reject her application for admission. However, the fact is that Ms. Shamis engaged in the unlawful "practice" of law without a license for approximately six years. No reason is given in this record as to why she never complied with the rules requiring submission of an application to the appropriate character and fitness committee.

licensed attorney capable of performing the tasks she undertook without assistance. Given the fundamental nature of the right to counsel and the protection this right is afforded because of its importance to the criminal defendant, the mere presence of the licensed attorney during the phases conducted by Shamis, without more, cannot satisfy the right to counsel. Further, the fact that Shamis graduated from an accredited law school, was experienced and performed adequately at trial does not matter. She is not counsel for purposes of the Sixth Amendment of the Federal Constitution or article I, § 6 of the New York State Constitution. Because this case involves the absolute deprivation of counsel during those portions of the trial handled by an imposter, *not* representation, related to those portions of the trial conducted by a duly licensed counsel, that may or may not have been effective and meaningful, the *Felder* rule, that defendant is not required to demonstrate that he was prejudiced in terms of his representation, applies.

Accordingly, I dissent.

Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur with Chief Judge KAYE; Judge G.B. SMITH dissents and votes to reverse and order a new trial in a separate opinion.

Order affirmed.