People v Brinkley (2019 NY Slip Op 05728)





People v Brinkley


2019 NY Slip Op 05728


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

110685

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
AARON J. BRINKLEY, Appellant.

Calendar Date: June 7, 2019

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Rumsey, JJ.


Danielle Neroni Reilly, Albany, for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered December 6, 2018, upon a verdict convicting defendant of the crime of aggravated cruelty to animals.
Defendant and his adult nephew, who lived together, bought a puppy who, by the time of the incident in question, had grown to weigh approximately 30 pounds. Among other approaches to train and discipline the dog, they used negative reinforcement, including promptly "paddling" or "popping" the dog on his rear end with an open hand after an unwanted behavior, then placing him in his crate for a time out. On one occasion when the dog was approximately 15 months old, the nephew discovered that the dog had defecated in the apartment. Upon attempting to paddle him, the dog bit the nephew's thumb, causing bleeding and injury. The nephew was then able to get the dog into his crate. Approximately 10 minutes later, defendant arrived home, was told by the nephew what had happened and saw the nephew's injury. Defendant removed the dog from his crate, brought him to the nephew, put the dog's face by the injured thumb, told him that he was a bad dog (ostensibly to teach him that biting was bad) and paddled him a few times. At that point, the dog bit off a portion of defendant's thumb. Defendant then called a friend to bring him to the hospital. According to defendant, when he thereafter attempted to herd the dog onto the back porch, the dog became aggressive and continued to bite him, so defendant repeatedly kicked the dog, used a metal hammer to beat him into submission and put him out on the porch, where the dog died due to his injuries.
Defendant was charged by indictment with one count of aggravated cruelty to animals (see Agriculture and Markets Law § 353-a). Defendant then moved for, among other things, Huntley, Mapp and Dunaway hearings. County Court granted him a Huntley hearing to challenge the voluntariness of his various statements to the police, as well as a limited Mapp hearing to address the voluntariness of his consent to search his apartment. The court ultimately determined that defendant was not entitled to a more comprehensive Mapp or Dunaway hearing [*2]due to his failure to set forth sufficient allegations in his motion papers, and that his statements and consent to search were voluntarily given. After a jury trial in which defendant contended that his actions were justified, he was convicted as charged. County Court imposed a sentence of two years in the local jail. Defendant appeals.
The verdict is not against the weight of the evidence. Initially, although defendant made a specific motion for a trial order of dismissal at the close of the People's case-in-chief, he has not preserved his legal sufficiency challenge for this Court's review because he failed to renew his motion after putting on his own proof (see People v Henry, 169 AD3d 1273, 1273 n [2019]; People v Miranda, 163 AD3d 1168, 1169 [2018], lv denied 32 NY3d 1066 [2018]). Nevertheless, in reviewing defendant's argument that the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime beyond a reasonable doubt (see People v Napoli, 167 AD3d 1080, 1080 [2018]; People v Miranda, 163 AD3d at 1169). In conducting such a review, where an acquittal would not have been unreasonable, we view the evidence in a neutral light and, while giving deference to the jury's credibility determinations, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v Hilton, 166 AD3d 1316, 1318 [2018], lv denied 32 NY3d 1205 [2019]).
As relevant here, "[a] person is guilty of aggravated cruelty to animals when, with no justifiable purpose, he or she
. . . intentionally causes serious physical injury to a companion animal with aggravated cruelty" (Agriculture and Markets Law § 353-a [1]). That statute defines "aggravated cruelty" as "conduct which: (i) is intended to cause extreme physical pain; or (ii) is done or carried out in an especially depraved or sadistic manner" (Agriculture and Markets Law § 353-a [1]; see People v Napoli, 167 AD3d at 1080). Although not defined in Agriculture and Markets Law article 26, a serious physical injury is ordinarily considered to be any "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]; see Agriculture and Markets Law § 108 [29]; CJI2d[NY] Agriculture and Markets Law § 353-a). As charged to the jury here, conduct that would otherwise be criminal may nevertheless be justifiable when "[s]uch conduct is necessary as an emergency measure to avoid an imminent . . . private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue" (Penal Law § 35.05 [2]). Where the jury is presented with a justification charge, the People bear the burden of disproving that defense (see People v Steele, 26 NY2d 526, 528 [1970]; People v Walrad, 22 AD3d 883, 883 [2005]).
Here, the dog was clearly a companion animal (see Agriculture and Markets Law § 350 [5]) and defendant does not dispute that he caused the dog serious physical injury. Instead, defendant argues that he did not act with aggravated cruelty, he had a justifiable purpose and the People failed to disprove his justification defense. Although defendant testified that he did not want to hurt the dog and that he only did so because he was in shock from the injury to his thumb and was trying to protect himself and his nephew, other evidence contradicted that testimony. On cross-examination, defendant acknowledged that the dog was in the crate when defendant arrived home, and defendant could have left him there rather than taking him out to discipline him at that time. After being bitten but before attacking the dog, defendant called his friend; he had time to call the police or animal control, but did not do so. He also could have closed the dog in the bathroom, rather than hitting him with a hammer in that room and then carrying him to the porch. These acknowledgements disprove his justification defense, in that defendant was at least partially at fault for creating the situation that led him to react in a violent manner (see Penal Law § 35.05 [2]). In his statements to the police, defendant said that he was "angry" and "in defense mode" not only because of his injury but because his nephew was hurt; that he was so shocked from the severity of his injury that he "went after [the dog]" and hit him in his face and [*3]wherever else he could; and that he was "going to put [the dog] down, not . . . bring him somewhere, just do it," meaning that he "was going to kill him." Thus, the jury could have reasonably determined that defendant acted intentionally and without a justifiable purpose when he repeatedly kicked the dog and beat him with a hammer.
The veterinarian who performed the necropsy testified regarding the numerous lacerations, tremendous bruising, compressed cervical vertebra, blood spattering and staining around the dog's face, blood behind one eye and visible destruction of the dog's mouth, such that almost all of the dog's teeth were fractured or missing. Contrary to defendant's assertion that the dog bit onto the hammer with such force that he broke his own teeth, the veterinarian opined that a dog would not cause itself that much pain, and tremendous force would be required to damage the strong teeth of a young dog. She further opined that the cause of death was traumatic internal damage to the main organs of the dog's chest and abdomen, including a macerated liver and significantly bruised spleen. The free blood in the chest cavity and two collapsed lungs indicated that the dog struggled to breathe and likely suffered a difficult death. This testimony, along with pictures of the deceased dog, support the conclusion that defendant's kicking and attack with a hammer not only caused the dog serious physical injury but constituted aggravated cruelty, in that it was "carried out in an especially depraved or sadistic manner" (Agriculture and Markets Law § 353-a [1]; see People v Degiorgio, 36 AD3d 1007, 1009 [2007], lv denied 8 NY3d 921 [2007], cert denied 552 US 999 [2007]). Although an acquittal would not have been unreasonable had the jury believed defendant's contention that he was justified in protecting himself and his nephew from a crazed dog, the jury was free to reject defendant's self-serving testimony. Accordingly, the conviction is not against the weight of the evidence.
County Court did not err in limiting the scope of the suppression hearing. "[A] motion for a Dunaway[/Mapp] hearing must be supported by sworn allegations of fact which, if true, would warrant suppression" (People v McNair, 28 AD3d 800, 800 [2006]; see CPL 710.60 [1]). The sufficiency of the factual allegations should be evaluated by the face of a defendant's motion papers, assessed within the context of the case, and in light of the information available to him or her (see People v Lopez, 5 NY3d 753, 754 [2005]; People v Mendoza, 82 NY2d 415, 426-429 [1993]). The court properly determined that the allegations in defendant's motion were insufficient to warrant a hearing on certain issues, especially considering that he had been provided extensive pretrial discovery months prior to him making the motion (see People v Long, 8 NY3d 1014, 1015 [2007]; People v McKinney, 138 AD3d 604, 604 [2016], lv denied 27 NY3d 1153 [2016]; People v Desmond, 118 AD3d 1131, 1133-1134 [2014], lv denied 24 NY3d 1002 [2014]; compare People v Bryant, 8 NY3d 530, 534 [2007]).
Following the suppression hearing, County Court did not err in concluding that defendant voluntarily consented to a search of his residence. "Whether consent has been voluntarily given is a question of fact to be determined based on the totality of the circumstances" (People v Miller, 159 AD3d 1053, 1054 [2018] [citations omitted]). "Factors for the court to consider include (1) whether consent was given while the individual was in police custody, how many officers were present on the scene, and whether the individual was handcuffed; (2) the personal background of the individual, including his or her age and prior experience with the law; (3) whether the individual offered resistance or was cooperative; and (4) whether the police advised the individual of his or her right to refuse consent" (People v Hill, 153 AD3d 413, 417 [2017] [citations omitted]; see People v Gonzalez, 39 NY2d 122, 128-130 [1976]). The People bear the "heavy burden" of establishing that consent was indeed voluntary (People v Gonzalez, 39 NY2d at 128; see People v Freeman, 29 NY3d 926, 928 [2017]), and "great deference is afforded to the factual determinations of the trial court" in that regard (People v Robinson, 156 AD3d 1123, 1129 [2017], lv denied 30 NY3d 1119 [2018]).
The hearing testimony of two police witnesses established that defendant granted oral and written consent to search his apartment after a consent form was explained to him. At the time, defendant was on a bench outside the hospital, not handcuffed or in police custody, and he had previously been cooperative. Defendant, who was 30 years old and a member of the US Navy, voluntarily accompanied the police to his apartment and handed them the keys. The [*4]hearing evidence did not establish that the police informed defendant that he had the right to refuse to consent to a search, but that is only one factor and does not necessarily render the consent involuntary (see People v Curtis, 144 AD3d 1199, 1200 [2016]; see also People v Kuhn, 33 NY2d 203, 208-209 [1973]). Although one officer detected the odor of alcohol on defendant's breath, and the evidence established that defendant had been given morphine while being treated at the hospital, the record fails to reveal that he was so intoxicated as to not understand the meaning of his consent (cf. People v Schompert, 19 NY2d 300, 305 [1967], cert denied 389 US 874 [1967]; People v Shields, 295 AD2d 374, 374 [2002], lv denied 98 NY2d 772 [2002]; People v Kehn, 109 AD2d 912, 914 [1985]). Indeed, the suppression hearing testimony and the officer's body camera footage capturing defendant's statements established that defendant was lucid and capable of rational conversation during multiple extended intervals prior to giving his consent for the search (see People v Williford, 124 AD3d 1076, 1078-1079 [2015], lv denied 25 NY3d 1209 [2015]). There is similarly no evidence that the early morning hour or defendant's purported lack of sleep rendered his consent involuntary. Contrary to defendant's argument that the consent was involuntary because the police had already been in the yard of his apartment building and looked on his porch, this could not have affected the voluntariness because he was unaware of those facts when he granted consent. Considering the totality of the circumstances, County Court properly determined that defendant voluntarily consented to a search of his apartment and, thus, properly declined to suppress the evidence recovered during the search.
County Court did not abuse its discretion in limiting defendant's cross-examination of two police witnesses at trial. Although CPL 710.70 (3) entitles a criminal defendant "'to relitigate the issue of the voluntariness of a statement before the jury'" (People v Johnson, 303 AD2d 903, 907 [2003], lv denied 100 NY2d 539 [2003], quoting People v Pulliam, 258 AD2d 681, 683 [1999], lv denied 93 NY2d 977 [1999]), the statute is self-limited to pretrial statements within the meaning of CPL 60.45, and there is no analogous provision for relitigating other adverse pretrial decisions, such as a court's finding that a defendant's consent to search was voluntary (compare CPL 710.20 [1], with CPL 710.20 [3]). The court properly exercised its discretion by giving defendant considerable latitude at trial to explore the circumstances of his consent as a method to impeach the officers, but limiting the cross-examination because defendant had no right to relitigate at trial the validity of his consent to search his apartment (see People v Wilson, 100 AD3d 1045, 1047 [2012], lv denied 22 NY3d 998 [2013]; cf. People v Ruffino, 110 AD2d 198, 203 [1985]).
County Court did not abuse its discretion in admitting photographic exhibits into evidence. "Unless photographs lack probative value and are presented solely for the purpose of inflaming a jury, they are admissible in a criminal trial, particularly where they tend to support a material issue or corroborate other evidence in the case" (People v Molineaux, 156 AD3d 1250, 1252 [2017] [internal quotation marks and citations omitted], lv denied 31 NY3d 1085 [2018]; see People v Pobliner, 32 NY2d 356, 370 [1973], cert denied 416 US 905 [1974]). Once a relevant purpose for a photograph is demonstrated, the question of whether the probative value of the photograph outweighs any prejudice to the defendant rests within the trial court's sound discretion (see People v Stevens, 76 NY2d 833, 835 [1990]). Photographs taken during the necropsy show the dog's various injuries. Although they are unpleasant, the photographs are relevant to establish disputed and material issues, namely, defendant's intent to cause serious physical injury with aggravated cruelty, and they help illustrate and corroborate the medical testimony (see People v Molineaux, 156 AD3d at 1252; People v Powell, 115 AD3d 998, 1000 [2014], lv denied 23 NY3d 1024 [2014]). Similarly, the photographs of defendant's apartment depict its layout and corroborate the testimony about the movements throughout the incident. Although some of the pictures contain smears or small pools of what appears to be blood, they are not particularly gruesome. Because aggravated cruelty was a contested issue, we cannot say that County Court abused its discretion in admitting all of the photographs, or that they were cumulative to the testimony (see People v Silva, 135 AD3d 498, 498 [2016], lv denied 28 NY3d 936 [2016]; People v Wright, 192 AD2d 875, 876-877 [1993], lv denied 82 NY2d 809 [1993]).
County Court did not err in admitting exhibits containing the patrol officer's body camera footage. The record supports the People's assertion that the portions of the videos played for the jury contain only defendant's statements [FN1]. Contrary to defendant's argument that the exhibits contain inadmissible hearsay, "[p]lainly, defendant's own statements could be received in evidence as party admissions" (People v Caban, 5 NY3d 143, 151 n [2005]; see People v Grant, 17 NY3d 613, 622 [2011]; People v Chico, 90 NY2d 585, 589 [1997]). To the extent that the body camera captured statements made by others, they are not hearsay because the People did not offer the videos for the truth of those statements (see People v Irby, 140 AD3d 1319, 1322-1323 [2016], lv denied 28 NY3d 931 [2016]; People v McCottery, 90 AD3d 1323, 1325 [2011], lv denied 19 NY3d 975 [2012]; People v Mertens, 97 AD2d 595, 596 [1983]; see also People v Brensic, 70 NY2d 9, 14 [1987], amended 70 NY2d 722 [1987]).
County Court did not err in refusing to give a jury instruction regarding justification under Penal Law § 35.15. Subject to additional requirements where "deadly physical force" is used (Penal Law § 35.15 [2]), Penal Law § 35.15 (1) permits a person to "use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (emphasis added). The language of the statute plainly limits the defense to situations where one person uses force against another person, making it inapplicable where, as here, a person used force to defend himself or herself against an animal (see People v George, 16 Misc 3d 74, 76 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]). We note that, despite the imprecise fit of Penal Law § 35.05 (2) to the facts of this case (see People v Craig, 78 NY2d 616, 623 [1991]), the court nonetheless instructed the jury regarding that justification defense, which the jury rejected.
County Court did not err in its handling of the presentence report. Defendant contends that the court should have disregarded the report in its entirety and ordered a new one because the Probation Department did not abide by counsel's request to be present for the presentence interview. "New York's right to counsel applies to every critical stage of the criminal proceeding" (People v Jacobs, 6 NY3d 188, 195 [2005] [citation omitted]), as does the parallel federal right (see Holloway v Arkansas, 435 US 475, 489 [1978]). However, in light of the nonadversarial nature of a routine presentence interview by a probation officer, courts have held that such an interview does not constitute a critical stage of the proceedings (see People v McNamara, 103 AD3d 1273, 1273 [2013], lv denied 21 NY3d 913 [2013]; People v Cortijo, 291 AD2d 352, 352 [2002], lv denied 98 NY2d 674 [2002]; see also United States v Edelen, 561 F Appx 226, 237 [4th Cir 2014], certs denied ___ US ___, ___, 135 S Ct 1545, 1546 [2015]; United States v King, 559 F3d 810, 813-814 [8th Cir 2009], cert denied 558 US 863 [2009]; United States v Tyler, 281 F3d 84, 96 [3d Cir 2002], cert denied 537 US 858 [2002]; United States v Jackson, 886 F2d 838, 844-845 [7th Cir 1989]). Therefore, defendant did not have a right to have counsel present during that interview. In any event, County Court granted defendant's request to strike the portion of the report containing defendant's statement related to this crime.
Although County Court sentenced defendant to the maximum permissible term of two years in jail (see Agriculture and Markets Law § 353-a [3]), we cannot conclude that the sentence is harsh or excessive, given defendant's extreme violence in this incident. The Agriculture and Markets Law permits a court, in addition to imposing any other penalty provided by law, to issue an order directing that a convicted defendant may not "own, harbor, or have custody or control of any other animals, other than farm animals, for a period of time which the court deems reasonable" (Agriculture and Markets Law § 374 [8] [c]). The People requested such an order to [*5]be in effect for 100 years, but the court instead stated that it would impose such an order for 50 years [FN2]. Defendant argues that 50 years is unreasonable because, he asserts, it is longer than any term for an order of protection contemplated by the Criminal Procedure Law. As the People point out, defendant's assertion is incorrect, as an order of protection may remain in effect for eight years beyond a convicted person's maximum term of incarceration, which could be up to life in prison (see CPL 530.12 [5] [A] [ii]; 530.13 [4] [A] [ii]; Penal Law § 70.00 [2] [a]). In any event, the Agriculture and Markets Law does not contain an outside limit on orders barring animal possession, nor reference any time limits contained in the Criminal Procedure Law, instead permitting such an order for whatever length of time "the court deems reasonable" (Agriculture and Markets Law § 374 [8] [c]; see Jed L. Painter, Practice Commentaries, McKinney's Cons Laws of NY, 2017 Electronic Update, Agriculture and Markets Law § 373 [noting that "the court has ultimate and unfettered discretion in setting a term" for this type of order]). Considering defendant's violent and fatal actions against his own dog in this incident, we decline to disturb the court's determination regarding the period of time that the order will remain in effect.
Several of defendant's arguments are unpreserved for appellate review — including his arguments that he was deprived of due process by the timing of County Court's suppression decision, the court's decision to allow the People to file an amended bill of particulars, the People's summation and the court's alleged reliance at sentencing on certain information outside the record or allegedly untrue assumptions, as well as his argument that the police did not have a sufficient legal basis to ask for his consent to search his apartment — and we decline defendant's request to exercise our interest of justice jurisdiction. We have reviewed defendant's remaining contentions and find them to be without merit.
Egan Jr., J.P., Lynch, Devine and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: We reject defendant's contention that it was error for the People to play only certain portions of the videos. As the challenged exhibits were admitted into evidence in their entirety, defendant could have readily played any portion of the recordings for the jury on cross-examination or during his case-in-chief. Further, the jury could have requested during deliberations to view any portions or the entirety of the videos, though it did not.

Footnote 2: Although the parties discuss the order as if it is in effect for 50 years, as stated by County Court during sentencing, we note that the signed order apparently contains an error, in that the expiration date listed thereon is December 6, 2119, which would be 101 years.